IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| YOLANDA SCOTT | * | |
| | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | NO: 4:09CV00911   SWW |
| | * | |
| | * | |
| ARKANSAS STATE CRIME LAB; | * | |
| KERMIT B. CHANNELL, II; and RAY | * | |
| HARRISON | * | |
| | * | |
| Defendants | * | |

**ORDER**

Yolanda Scott ("Scott") brings this employment discrimination case pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981 against her former employer, the Arkansas State Crime Lab ("ACL"), and her former supervisors, Kermit B. Channell, II ("Channell") and Ray Harrison ("Harrison').[1]  Before the Court is defendants' motion for summary judgment (docket entry #13, #14, #15), Scott's response in opposition (docket entry #18, #19, #20), and defendants' reply (docket entry #21).  After careful consideration, and for reasons that follow, summary judgment will be entered in defendants' favor, and the case will be dismissed with prejudice.

I.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

---

[1]Scott sues Harrison and Channell in their individual and official capacities.

and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

II.

Scott, an African-American, worked as a evidence technician in the ACL from June 16, 2008 until her termination on March 4, 2009. During Scott's tenure at the ACL, Harrison served as her immediate supervisor, and Channel served as the director of the ACL. Scott alleges that she was "treated differently than her co-workers and was subjected to yelling and cursing that white employees were not subjected to." Compl., ¶ 8. Scott reports that she received "write-ups" about her behavior "in relation to other co-workers," and in March 2009, Harrison and Channell terminated her employment. According to Scott, "white employees have had some of the same problems as she had but were not written up, were not coached and certainly, were not terminated." Compl., ¶ 11. Scott claims that she was denied the "deference, assistance and accommodations that were extended to similarly situated white employees" and was subjected to

different terms and conditions of employment because of her race.  Compl., ¶¶ 12-13.

III.

Defendants move for summary judgment, asserting that Scott cannot make out a *prima facie* case of discrimination or rebut the legitimate, non-discriminatory reason for her termination.  Additionally, defendants assert that Scott's claims for monetary damages under 42 U.S.C. §§ 1981 and 1983 are barred under the doctrine of sovereign immunity, and her claims pursuant to Title VII must be denied for failure to exhaust administrative remedies.  The Court will consider each argument separately.

Failure to Exhaust

To exhaust Title VII's administrative remedies,  an individual must timely file a charge of discrimination and receive notice of the right to sue from the Equal Employment Opportunity Commission.  *See* 42 U.S.C. § 2000e-5(b),(c),(e).  Once an employee receives a right-to-sue letter, he or she has 90 days in which to file suit.  42 U.S.C. § 2000e-5(f)(1).  The failure to file suit within 90 days of receiving a right-to-sue letter bars a claim based upon acts asserted in the underlying discrimination charge.  *See Spears v. Missouri Dept. of Corrections and Human Resources*, 210 F.3d 850, 852 (8th Cir. 2000).

In this case, Scott concedes that her claims pursuant to Title VII are time-barred for failure to file suit within 90 days of receiving notification of her right to sue.  Accordingly, these claims will be dismissed with prejudice.

Sovereign Immunity

The sovereign immunity of the States recognized in the Eleventh Amendment[2] bars any

---

[2]The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States

suit brought in federal court against a state or state agency, regardless of the nature of the relief sought, unless Congress has abrogated the States' immunity or a state has consented to suit or waived its immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 74 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Edleman v. Jordan*, 415 U.S. 651, 663 (1974). In addition to barring all claims brought directly against a state or state agency, the Eleventh Amendment protects state officials sued in their official capacities from all claims, with the exception of certain claims for prospective, equitable relief. *See Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).

Scott concedes that her claims against the ACL and Harrison and Channell in their official capacities are barred under the doctrine of sovereign immunity. Thus, the sole claims remaining for review are Scott's race discrimination claims against Harrison and Channell in their individual capacities.

Race Discrimination

To establish discrimination based on disparate treatment, Scott shoulders the burden to show, with circumstantial or direct evidence, that the complained-of conduct was motivated by race discrimination. Because Scott presents no evidence that directly points to the presence of a discriminatory motive, the Court will analyze her discrimination claims under the three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).[3] Under the *McDonnell Douglas* framework, Scott must establish a *prima facie* case of discrimination by

---

by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S. Const. amend. XI.

[3]The *McDonnell Douglas* burden-shifting analysis is applicable to claims brought under Title VII, 42 U.S.C. § 1983, and 42 U.S.C. § 1981. *See Lockridge v. Board of Trustees of University of Arkansas,* 315 F.3d 1005, 1013 (8th Cir. 2003).

showing that (1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered adverse employment action;[4] and (4) similarly situated employees that were not members of her protected class were treated differently. *See Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005).

If Scott makes a *prima facie* showing, the burden shifts to defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Then, the burden shifts back to Scott to present evidence that the stated reason for her termination is pretext for discrimination. *Id.* Specifically, Scott must (1) discredit defendants' asserted reasons and (2) show that the circumstances permit a reasonable inference that race was the real reason for the adverse employment action. *See Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).

Defendants contend that Scott cannot make out a *prima facie* case of disparate treatment because she is unable to show that she was treated less favorably than similarly-situated employees. According to Scott, she was subjected to "yelling and cursing from coworkers and white employees"[2] and Harrison "knew of the treatment and did nothing to intervene except to recommend her termination." Docket entry #19, at 2. Scott further states that "none of the white

---

[4]Defendants assert, and the Court agrees, that Scott's allegations regarding counseling, write-ups, and a "needs-improvement" performance evaluation, standing alone, do not amount to actionable adverse employment action. *See Sallis v. University of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005)(noting that an adverse employment action is a tangible change in working conditions that produces a material employment disadvantage–such as termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects). Scott's termination, however, constitutes adverse employment action.

[2]Scott does not proceed under a hostile environment theory and acknowledges that she was not subject to race-based harassment, stating: "Plaintiff . . . does not complain that there were ever any racial slurs or racial epithets uttered at her but the general treatment she received every day made her feel very strongly that she was being treated differently than white employees." Docket entry #19, at 3.

employees were subjected to any of this kind of treatment." *Id.*

Scott identifies Marion East and Sheila Green as similarly-situated white employees who received more favorable treatment than she. *See* docket entry #13, Ex. #1 (Scott Dep.), at 135-138. In deposition, Scott testified that East told her that she had "problems" with co-workers when she worked at the ACL and was permitted to transfer to another department. Scott provides no other evidence regarding the circumstances of East's employment at the ACL. Scott testified that she never met Green, but other employees told her that Green had experienced problems with coworkers and, like Scott, her employment was terminated.

Scott's testimony regarding East is inadmissable hearsay that, in any event, fails to show that East was similarly situated to Scott in all relevant respects. Scott's testimony regarding Green, which in no way demonstrates disparate treatment, is also inadmissable hearsay. The Court agrees that Scott has failed to establish a *prima facie* case of race discrimination.

Defendants Harrison and Channell testify that they made the decision to terminate Scott's employment because, despite counseling and remedial efforts, Scott was unable to get along with co-workers. *See* docket entry #13, Ex. #2 (Harrison Dep.) at 40; Ex. #3 (Channell Dep.) at 11-13. Defendants assert that even assuming Scott could establish a *prima facie* case of discrimination, she presents no evidence that discredits the proffered reason for her termination. The Court agrees that Scott has failed to come forward with any evidence to rebut defendants' asserted non-discriminatory reason for her termination.

### IV.

Finding no genuine issues for trial in this case, the Court finds that defendants' motion for summary judgment (docket entry #13) should be and it is hereby GRANTED. Pursuant to

the

judgment entered together with this order, this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 12TH DAY OF JANUARY, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE